## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN JONES, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| PDC ENERGY, INC., MARK E. ELLIS, BARTON R. BROOKMAN, PAMELA R. BUTCHER, PAUL J. KORUS, LYNN A. PETERSON, CARLOS A. SABATER, and DIANA L. SANDS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Brian Jones ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder action brought by Plaintiff against PDC Energy, Inc. ("PDC or the "Company") and the members of PDC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell the Company to Chevron Corporation ("Chevron") (the "Proposed Transaction").

2.      On May 21, 2023, PDC entered into an Agreement and Plan of Merger with Chevron and Chevron's direct, wholly-owned subsidiary, Bronco Merger Sub Inc. ("Merger Sub") (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, PDC shareholders will receive 0.4638 of a share of Chevron common stock per share of PDC common stock.

3.      On June 20, 2023, the Board authorized the filing of the materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC. Specifically, the Registration Statement, which recommends that PDC stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information, including with respect to PDC's financial projections and the most critical metric for PDC stockholders—PDC's unlevered free cash flow ("UFCF") projections—relied upon by the Board's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in connection with its fairness opinion, as well as: (i) financial projections for Chevron and the combined company; (ii) the financial analyses underlying J.P. Morgan's fairness opinion; and (iii) potential conflicts of interest faced by the Company's additional financial advisor, PJT Partners LP ("PJT Partners").

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PDC stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for PDC stockholders to vote on the Proposed Transaction will soon be scheduled.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and PDC's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  PDC's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of PDC common stock.

10.    Defendant PDC is a Delaware corporation, with its principal executive offices located at 1099 18th Street, Suite 1500, Denver, Colorado 80202.  PDC's shares trade on the Nasdaq Global Select Market under the ticker symbol "PDCE."

11.    Defendant Mark E. Ellis has been Non-Executive Chairman of the Board at all relevant times.

12.    Defendant Barton R. Brookman has been President, Chief Executive Officer, and a director of the Company at all relevant times.

13.     Defendant Pamela R. Butcher has been a director of the Company at all relevant times.

14.     Defendant Paul J. Korus has been a director of the Company at all relevant times.

15.     Defendant Lynn A. Peterson has been a director of the Company at all relevant times.

16.     Defendant Carlos A. Sabater has been a director of the Company at all relevant times.

17.     Defendant Diana L. Sands has been a director of the Company at all relevant times.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19.     PDC is a domestic independent exploration and production company that acquires, explores and develops properties for the production of crude oil, natural gas and natural gas liquids ("NGLs"), with operations in the Wattenberg Field in Colorado and the Delaware Basin in west Texas.  The Company's operations in the Wattenberg Field are focused in the horizontal Niobrara and Codell plays and the Company's operations in the Delaware Basin are primarily focused in the horizontal Wolfcamp zones.

**The Proposed Transaction**

20.     On May 22, 2023, PDC announced that it had entered into the Proposed Transaction, stating, in relevant part:

SAN RAMON, Calif. and DENVER, Colo.--(BUSINESS WIRE)--May 22, 2023-
- Chevron Corporation (NYSE: CVX) announced today that it has entered into a
definitive agreement with PDC Energy, Inc. (NASDAQ: PDCE) to acquire all of
the outstanding shares of PDC in an all-stock transaction valued at $6.3 billion,

or $72 per share. Based on Chevron's closing price on May 19, 2023 and under the terms of the agreement, PDC shareholders will receive 0.4638 shares of Chevron for each PDC share. The total enterprise value, including debt, of the transaction is $7.6 billion.

The acquisition of PDC provides Chevron with high-quality assets expected to deliver higher returns in lower carbon intensity basins in the United States. PDC brings strong free cash flow, low breakeven production and development opportunities adjacent to Chevron's position in the Denver-Julesburg (DJ) Basin, as well as additional acreage to Chevron's leading position in the Permian Basin.

"PDC's attractive and complementary assets strengthen Chevron's position in key U.S. production basins," said Chevron Chairman and CEO Mike Wirth. "This transaction is accretive to all important financial measures and enhances Chevron's objective to safely deliver higher returns and lower carbon. We look forward to welcoming PDC's team and shareholders to Chevron and continuing both companies' focus on safe and reliable operations."

"The combination with Chevron is a great opportunity for PDC to maximize value for our shareholders. It provides a global portfolio of best-in-class assets," said Bart Brookman, PDC President and CEO. "I look forward to blending our highly complementary organizations, and I'm excited that PDC's assets will help propel Chevron toward our shared goal for a lower carbon energy future."

**Transaction Benefits**

- **Accretive to earnings per share, free cash flow and ROCE:** Chevron anticipates the transaction to be accretive to all key financial measures within the first year after closing and to add about $1 billion in annual free cash flow at $70 per barrel Brent and $3.50 per Mcf Henry Hub (approximate 2024 futures prices as of May 2023).
- **Strong strategic fit:** Increases Chevron's proved reserves by 10% at an acquisition cost under $7 per barrel of oil equivalent (BOE).
  - DJ Basin – 275,000 net acres adjacent to Chevron's existing operations that add over 1 billion BOE of proved reserves in highly economic locations and enable capital and operational synergies.
  - Permian Basin – 25,000 net acres that are held by production and will be integrated into Chevron's existing capital efficient development operations.
- **Capital and cost efficient:**
  - Capital expenditures – Chevron expects to increase capex by ~$1 billion per year, raising its guidance range to $14 to $16 billion through 2027, after realizing about $400 million in capex efficiencies post-closing.
  - Operational expenditures – the transaction is expected to achieve run-rate cost synergies of around $100 million before tax within a year of closing.

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's equity. In aggregate, upon closing of the transaction, Chevron will issue approximately 41 million shares of common stock. Total enterprise value of $7.6 billion includes net debt.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close by year-end 2023. The acquisition is subject to PDC shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of 14% on a 10-day average based on closing stock prices on May 19, 2023.

**Advisors**

Morgan Stanley & Co. LLC is acting as lead financial advisor to Chevron. Evercore also advised Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. J.P. Morgan Securities LLC is acting as lead financial advisor to PDC Energy and provided a fairness opinion to the Board of Directors. Wachtell, Lipton, Rosen & Katz and Davis Graham & Stubbs are jointly serving as the Company's legal counsel. PJT Partners also advised PDC Energy.

**The Materially Incomplete and Misleading Registration Statement**

21.    On June 20, 2023, the Board caused to be filed a materially incomplete and misleading Registration Statement with the SEC.  The Registration Statement, which recommends that PDC stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for PDC, including the UFCFs relied upon by the Board's financial advisor, J.P. Morgan, in connection with its fairness opinion, as well as financial projections for Chevron and the combined company; (ii) the financial analyses that support the fairness opinion provided by J.P. Morgan; and (iii) potential conflicts of interest faced by PJT Partners.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for PDC, Chevron and the Combined Company*

22.     The Registration Statement fails to disclose material information concerning the financial projections for PDC.

23.     Critically, the Registration Statement fails to disclose the UFCFs that PDC was forecasted to generate during fiscal years 2023 through 2031, relied upon by the Board's financial advisor in connection with its discounted cash flow analysis ("DCF").  A DCF is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or UFCFs) are the core component of the analysis.[1]  The UFCFs formed the bases of the DCF of PDC performed by J.P. Morgan in connection with its fairness opinion.  *See* Registration Statement at 50 ("J.P. Morgan calculated the present value, as of April 30, 2023, of unlevered free cash flows that PDC was forecasted to generate during fiscal years 2023 through 2031 based upon each of the Management Outlook + LT $55 Flat Case, the Management Outlook + LT $70 Flat Case and the Strip Case.").

24.     The Registration Statement includes a summary of PDC's Management Outlook + LT $55 Flat Case, Management Outlook + LT $70 Flat Case and the Strip Case.  *See id.* at 55.  Yet, this summary fails to include the most important projections – the UFCFs.

25.     Instead, the Registration Statement includes the EBITDAX that PDC is projected to generate during fiscal years 2023 through 2031 for each set of management projections relied upon by J.P. Morgan.  *See id.*  EBITDA projection metrics are not sufficient proxies for UFCF projections.  *See, e.g., Nichting v. DPL Inc.*, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D.

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the DCF method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the DCF method to be the preeminent method of valuation).

Ohio July 15, 2011) ("[I]t smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision.").

26.      Moreover, the omission of the UFCFs renders the summary of J.P. Morgan's *DCF* misleading because the summary of J.P. Morgan's *DCF* only includes the resulting *weighted* implied per share values of PDC.  *See* Registration Statement at 50 ("At the direction of the PDC Board, J.P. Morgan [ ] applied a 20% weighting to the results of its [DCF] using the Management Outlook + LT $55 Flat Case and a 40% weighting to each of the results of its [DCF] using the Management Outlook + LT $70 Flat Case and the Strip Case, which indicated a range of implied equity value of $64.75 to $82.00 per share of PDC common stock[.]").  Without disclosure of the UFCFs, PDC stockholders are unable to fully and accurately understand the true value of the Company, including whether the weightings the Board instructed J.P. Morgan to apply were appropriate.

27.      In sum, the omission of the UFCFs renders the projections on page 55 and the summary of the DCF of PDC performed by J.P. Morgan set forth on page 50 of the Registration Statement incomplete and misleading, because the Registration Statement provides a materially incomplete and misleading valuation picture of the Company.

28.      Moreover, the Registration Statement fails to disclose any financial projections for Chevron and the combined company even though PDC stockholders will receive merger consideration entirely in the form of Chevron common stock if the Proposed Transaction is approved.  This omitted information is crucial to PDC stockholders' ability to assess the value of Chevron and whether their ownership percentage in the combined company is fair in light of Chevron's value.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

29.     The Registration Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

30.     Specifically, according to the Registration Statement:

the PDC Board directed J.P. Morgan to apply a 20% weighting to the results of J.P. Morgan's financial analyses using the "Management Outlook + LT $55 Flat Case," and a 40% weighting to each of the results of J.P. Morgan's financial analyses using the "Management Outlook + LT $70 Flat Case" and the "Strip Case"[.]

Registration Statement at 47.  Yet, the Registration Statement fails to disclose: (i) the Board's basis for directing J.P. Morgan to apply weightings to the results of J.P. Morgan's financial analyses; (ii) how the weightings were applied to J.P. Morgan's financial analyses; and (iii) the non-weighted results of J.P. Morgan's financial analyses.

31.     With respect to J.P. Morgan's *DCF*, in addition to the Company's UFCFs, the Registration Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 10.25% to 11.25%; and (iii) the individual ranges of implied per share values resulting from each of the Company's respective Management Outlook + LT $55 Flat Case, Management Outlook + LT $70 Flat Case and Strip Case.[2]

32.     With respect to J.P. Morgan's *Selected Public Trading Multiples* analysis, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics of the companies observed; and (ii) PDC's estimated operating cash flow for fiscal years ending 2023 and 2024.

---

[2] Despite J.P. Morgan performing a DCF using three sets of financial projections, the summary of J.P. Morgan's DCF in the Registration Statement discloses just one indicative range of implied equity values per share of PDC common stock.  *See id.* at 50.

33.     With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics of the transactions observed.

34.     With respect to J.P. Morgan's *Analyst Price Target* analysis, the Registration Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning PJT Partners' Potential Conflicts of Interest*

35.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by PJT Partners.

36.     For example, the Registration Statement fails to disclose a summary of any financial analyses PJT Partners performed for the Board during the sale process.

37.     Additionally, the Registration Statement fails to disclose (i) the amount of any compensation PJT Partners expects to receive in connection with its engagement, including whether it is contingent upon closing of the Proposed Transaction; and (ii) whether PJT Partners has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the details of the services performed and amount of compensation received.

38.     In sum, the omission of the above-referenced information renders statements in the "PDC Unaudited Prospective Financial Information," "Opinion of PDC's Financial Advisor," and "Background of the Merger" sections of the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of PDC will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PDC**

39.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  PDC is liable as the issuer of these statements.

41.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

42.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

44.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

45.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of PDC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PDC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Registration Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

51.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PDC, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  June 27, 2023                              **ACOCELLI LAW, PLLC**


By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*